## SMITH & LAWSON v. TAYLOR. (No. 6566.)

(Court of Civil Appeals of Texas. Austin. March 21, 1923.)

1. **Arbitration and award** &#9758;82(1)—**Award is conclusive between parties until impeached upon sufficient grounds.**

As between the parties and their privies, an award is a final adjudication by a court of the parties' own choice, and until impeached, if regular on its face, is conclusive upon the merits.

2. **Judgment** &#9758;256(2)—**Findings on special issues not within rule that verdict must be set aside before rendering contrary judgment.**

The rule that the trial court should set a verdict aside before rendering judgment contrary thereto has no application when the case is submitted upon special issues, since in such cases the jury finds facts only and not a verdict.

3. **Judgment** &#9758;256(2)—**Court may ignore immaterial findings on special issues and enter judgment as evidence requires.**

Where the facts found by a jury are immaterial, the court may properly ignore such findings and render such judgment as the undisputed evidence requires.

4. **Appeal and error** &#9758;930(3)—**When appellate court will presume trial court found issue in favor of appellee.**

Where the jury did not find that the arbitrators in rendering their award were either guilty of fraud or gross mistake and fraud was not pleaded by appellant and there was testimony showing that the arbitrators were not guilty of any gross mistake, and neither party asked to have the issue of gross mistake submitted to the jury, if it was necessary to support the judgment, the appellate court will presume that the trial court found in favor of the appellee upon that issue.

Appeal from Coleman County Court; L. G. Mathews, Judge.

Action by Smith & Lawson against F. Wal Taylor. Judgment for defendant, and plaintiffs appeal. Affirmed.

Baker & Weatherred, of Coleman, for appellants.

Snodgrass & Dibrell, of Coleman, for appellee.

KEY, C. J. The nature and result of this suit is stated as follows in appellants' brief:

"Appellants, Smith & Lawson, as plaintiffs, instituted suit herein against F. Wal Taylor, as defendant, for the sum of $465.65, alleged to be due them by appellee for amounts overpaid to appellee by appellants on two lots of cotton, appellants alleging that in March, 1920, appellee sold them 50 bales of cotton at the agreed price of 36¾ cents per pound, basis middling, for which cotton appellants advanced to appellee the sum of $6,450, under a written agreement that said cotton was sold and should be paid for on the outturn (that is to say, the weight and class of same as rendered by M. H. Wolfe & Co.), and that appellee would refund any amount of overpayment caused by loss in weight or class; and that the outturns rendered on said cotton by said M. H. Wolfe & Co. showed an overpayment of $16.43 on said 50 bales; and appellants alleging that on March 22, 1920, appellee Taylor sold them 30 bales of cotton at the agreed price of 36¾ cents per pound, basis middling, for which cotton appellants advanced to appellee the sum of $4,003, under a written agreement that said cotton was sold and should be paid for on the outturn on same as rendered by M. H. Wolfe & Co., and that appellee would refund any amount of overpayment caused by loss in weight or class; and that the outturns rendered on said cotton by said M. H. Wolfe & Co. showed an overpayment of $449.22 on said 30 bales; and alleging that plaintiffs had demanded payment of said sums, but defendant had wholly failed and refused to pay same.'

"Defendant, F. Wal Taylor, answered by general denial, and that on or about the last of June, 1920, plaintiffs and defendant agreed to arbitrate their differences, and appointed B. F. Robey, Leon L. Shield, and H. W. Collins as arbiters, who thereafter, about July 2, 1920, rendered their decision, in writing, that defendant F. Wal Taylor should be released from any and all claims arising out of said controversy, and pleading same as an estoppel.

"Plaintiffs replied by first supplemental petition, and by trial amendment, that the decision of said arbiters was not binding, as their findings showed that same was not based on the outturns as rendered by M. H. Wolfe & Co., but on their own opinion as to the value of said cotton; that their findings were grossly unjust and inequitable to plaintiffs; that the evidence introduced before said arbiters entitled plaintiffs to a decision for said sum of $465.65, and that said arbiters in their decision found that plaintiffs had overpaid defendant for the cotton in controversy, on the outturns as rendered by M. H. Wolfe & Co., and that upon said finding plaintiffs were entitled to judgment against defendant for the amount of such overpayment.

"The court submitted the cause on special issues, which issues and the findings of the jury thereon are as follows:

" 'Question. No. 1. Was the decision rendered by the arbitrators fair and just to the plaintiffs, Smith & Lawson, upon the evidence offered before said arbitrators? Answer: No.

" 'Question No. 2. What was the value of the 50 bales of cotton in controversy on the outturn as rendered by M. H. Wolfe & Co., on said cotton? Answer: $6,433.06.

" 'Question No. 3. What was the value of the 30 bales of cotton in controversy on the outturns on said cotton as rendered by M. H. Wolfe & Co. on said cotton? Answer: $3,-553.78.'

"And thereupon plaintiffs presented their motion for judgment in their favor upon said issues, which the court overruled and entered judgment for defendant without setting aside the findings of the jury.

"Appellants duly filed their motion for new trial on December 5th, and their first amended motion for new trial on December 20, 1921, in which is set out the assignments of error hereinafter copied, which motion was by the court overruled, and appellants duly perfected their appeal by giving notice in open court and filing bond within the time provided by law, and this cause is before this court for its decision upon the errors assigned in appellants' amended motion for new trial."

### Opinion.

The uncontroverted testimony shows that the matters in dispute in this case were submitted to arbitration before this suit was instituted, and under an agreement by which the parties bound themselves to abide the decision and award of the arbitrators; that the arbitrators gave the parties a hearing and rendered a decision in writing, in favor of the appellee; that award was pleaded by appellee as a defense to the suit, and, while appellants charged that the arbitrators made a gross mistake in deciding the matter, they did not charge that any one was guilty of any fraud; nor did the jury find that there was either fraud or gross mistake.

[1] In view of the facts referred to, we hold that the trial court correctly decided the case against appellants, notwithstanding the finding of the jury that the decision rendered by the arbitrators was not fair and just to appellants. The general rule as to the conclusiveness of awards by arbitrators is stated as follows, in one of the most valuable law publications extant:

"As between the parties and their privies, an award is entitled to that respect which is due to the judgment of a court of last resort. It is, in fact, a final adjudication by a court of the parties' own choice, and, until impeached upon sufficient grounds in an appropriate proceeding, an award which is regular on its face is conclusive upon the merits of the controversy submitted, and it is not for the courts to otherwise inquire whether the determination was right or wrong, for the purpose of interfering with it, unless such power has been specially vested in them by statute, or unless the parties have intended that the award shall

not be final and conclusive." 3 Cyc. pp. 728, 729.

In 5 Corpus Juris, p. 179, the rule is stated thus:

"An honest mistake of judgment in the conclusion of arbitrators which does not exceed the bounds of the submission is not, as a general rule, ground of impeachment of the award, whether the alleged mistake is one of fact or of law, or of both. Although the court might have rendered a different decision, it will not substitute its judgment for that of the arbitrators. 'Such errors are among the contingencies which parties assume when they select such tribunals.' "

In Ruling Case Law, vol. 2, p. 386, it is stated:

"The award of arbitrators, acting within the scope of their authority, determines the rights of the parties as effectually as a judgment secured by regular legal procedure, and is as binding as a judgment, until it is regularly set aside or its validity questioned in a proper manner. Their decision on matters of fact and law is conclusive, and all matters in the award are thenceforth res judicata, on the theory that the matter has been adjudged by a tribunal which the parties have agreed to make final, a tribunal of last resort for that controversy."

In Jones v. Frosh, 6 Tex. 203, our Supreme Court, speaking through Mr. Justice Lipscomb, said:

"I take it to be an acknowledged rule of law, that an award, not impeachable with fraud, is conclusive of all matters that had been submitted to the arbitrators. It is as much so, as a judgment; and in the language of Chief Justice DeGray, in the Duchess of Kingston's case is, as a plea, a bar, or as evidence, conclusive between the same parties, upon the same matters."

In Ridgill Bros. v. Dupree, 85 S. W. 1166, this court, in a forcible opinion by Chief Justice Fisher, applied the same rule and held that the award of arbitrators, based on evidence in a common-law arbitration, is conclusive, in the absence of such gross mistake or unfair conduct as would justify the court in setting the award aside. It is stated in that case that there was much and seemingly a preponderance of testimony in favor of the appellee, and that but for the issue of arbitration the judgment would be affirmed; and, in the course of the opinion, it is said:

"The arbitration was not under the statute, but is governed by the rules of the common law; and it seems to have been fairly conducted, and the award fairly reached, based upon evidence. How much we may be convinced from the evidence in the record that the true title to the animal might be in Dupree, still we are of the opinion that he is bound by the award of the arbitrators. The arbitrators were men of his selection, and he introduced no evidence of fraud or such gross mistake or unfair conduct as would justify this court in setting aside the award."

To the same effect is the case of Robbs v. Woolfolk (Tex. Civ. App.) 224 S. W. 232, and a large number of decisions cited in Cyc., Corpus Juris, and Ruling Case Law, in support of the texts copied from those publications.

[2, 3] It may be conceded that in cases not submitted upon special issues, and in which the jury returned a verdict in favor of one of the parties, the trial court should set that verdict aside before rendering judgment for the opposite party. But that rule has no application when the case is submitted upon special issues, because in such case the jury finds the facts only, and does not find a verdict for either party. When the facts found by the jury are immaterial, the court may properly ignore such findings and render such judgment as the undisputed evidence requires.

[4] The jury did not find that, in rendering their award, the arbitrators were guilty of either fraud of gross mistake; and as fraud was not pleaded, and there was testimony tending to show that the arbitrators were not guilty of any gross mistake, and as neither party asked to have the issue of gross mistake submitted to the jury, if it is necessary to support the judgment, it will be presumed that the trial court found in favor of the appellee upon that issue.

Upon the whole case, our conclusion is that no ground for reversal has been shown; and therefore the judgment is affirmed.

Affirmed.